Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Irina V. Lyapis (SBN: 298723)
ilyapis@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel:   (415) 591-1000
Fax:   (415) 591-1400

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543
Tel:   (213) 615-1700
Fax:   (213) 615-1750

*Attorneys for Defendant*
OFFICE DEPOT, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT MINDS,<br><br>         Plaintiff,<br><br>    v.<br><br>OFFICE DEPOT, INC.,<br><br>         Defendant. | **Case No. 2:17-cv-07435-JFW (Ex)**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CLAIM I OF PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>Hearing Date:   Jan. 8, 2018, 1:30 p.m.<br><br>Hon. John F. Walter<br>Courtroom 7A<br>United States Courthouse<br>350 W. 1st Street<br>Los Angeles, CA 90012 |

# NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on January 8, 2018, at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable John F. Walter in Courtroom 7A of the United States Courthouse located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Office Depot, Inc. ("Office Depot") will and hereby does move the Court for an order dismissing with prejudice Claim I for Copyright Infringement of Plaintiff Great Minds' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file herein, and any further material and argument presented to the Court at the time of the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on November 28, 2017.

DATED: December 6, 2017            WINSTON & STRAWN LLP


                                   By: */s/ Jennifer A. Golinveaux*
                                       Jennifer A. Golinveaux
                                       Diana Hughes Leiden
                                       Irina V. Lyapis

                                       *Attorneys for Defendant*
                                       OFFICE DEPOT, INC.

# TABLE OF CONTENTS

**Page (s)**

NOTICE OF MOTION AND MOTION

I. Introduction ........................................................................................................1

II. Summary of Relevant Allegations ......................................................................1

III. Legal Standard ....................................................................................................5

IV. Office Depot's Reproduction of Eureka Math Materials for School Districts Does Not Exceed the Scope of the School Districts' License and Is Not Copyright Infringement ..................................................................6

    A. Licensee Schools and School Districts Are Permitted to Use Third Party Copy Services Like Office Depot.......................................................6

    B. Great Minds' Allegation That Office Depot "Actively Solicit[s]" Schools and School Districts for Commercial Reproduction of the Eureka Math Materials Cannot Save Its Defective Copyright Infringement Claim ................................................................................13

V. Conclusion ........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 5

*Automation by Design, Inc. v. Raybestos Prods. Co.*,
    463 F.3d 749 (7th Cir. 2006) .......................................................................... 7

*Avaya Inc. v. Telecom Labs., Inc.*,
    No. 06-2490, 2014 WL 97335 (D.N.J. Jan. 7, 2014) .................................... 10

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 5

*Bennett v. America Online, Inc.*,
    No. 06-13221, 2007 WL 2875169 (E.D. Mich. Sept. 28, 2007) .................. 10

*Blue Phoenix Media Inc. v. Essociate Inc.*,
    No. CV-1200834-JVS-MLGx, 2012 WL 12888834 (C.D. Cal. June
    15, 2012) (Selna, J.) ...................................................................................... 11

*CoreBrace LLC v. Star Seismic LLC*,
    566 F.3d 1069 (Fed. Cir. 2009) ...................................................................... 9

*Dore v. Arnold Worldwide, Inc.*,
    39 Cal. 4th 384 (2006) .................................................................................... 7

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ...................................................................................... 15

*EMI Catalogue P'ship v. CBS/FOX Co.*,
    No. 86 CIV 1149 (PKL), 1994 WL 163700 (S.D.N.Y. Apr. 28, 1994) .................. 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ........................................................................................ 6

*Great Minds v. FedEx Office & Print Servs., Inc.*,
    Case No. 16-CV-1462 (DRH) (ARL), 2017 WL 744574 (E.D.N.Y.
    Feb. 24, 2017) ........................................................................................*passim*

*Estate of Hevia v. Portrio Corp.*
   602 F.3d 34 (1st Cir. 2010) .................................................................................... 10

*Hogan Sys. Inc. v. Cybresource Int'l Inc.*,
   158 F.3d 319 (5th Cir. 1998) .................................................................................. 11

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) .................................................................................. 5

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
   176 F. Supp. 3d 137 (E.D.N.Y. 2016) .................................................................... 14

*Intel Corp. v. Advanced Micro Devices, Inc.*
   No. C-90-20237-WAI, 1994 WL 594041 (N.D. Cal. Oct. 20, 1994) ..................... 10

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) .................................................................................... 6

*Microsoft Corp. v. Logical Choice Computers, Inc.*,
   No. 99 C 1300, 2001 WL 58950 (N.D. Ill. Jan. 22, 2001) ..................................... 14

*Mindlab Media, LLC v. LWRC Int'l LLC*,
   No. CV 11-3405 CAS, 2012 WL 386695 (C.D. Cal. Feb. 6, 2012) ........................ 5

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1981) .................................................................................. 6

*San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*,
   132 F.3d 1303 (9th Cir. 1997) .................................................................................. 6

**Statutes**

17 U.S.C. §§ 101 *et seq.* ................................................................................................. 1

17 U.S.C. § 106 .......................................................................................................... 10, 14

17 U.S.C. § 106(1) ........................................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 5

iii
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CLAIM I
CASE NO. 2:17-CV-07435-JFW (Ex)

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Office Depot, Inc. ("Defendant" or "Office Depot") submits this Memorandum of Points and Authorities in support of its motion to dismiss Claim I of the Complaint filed by Plaintiff Great Minds ("Plaintiff" or "Great Minds"), alleging copyright infringement under 17 U.S.C. §§ 101 *et seq*.

## I. Introduction

Great Minds' claim for copyright infringement against Office Depot is its second attempt to hold a commercial copy service liable for assisting schools and school districts to exercise rights granted under the terms of a public license to Great Minds' educational materials. Earlier this year, the Eastern District of New York dismissed Great Minds' nearly identical allegations against FedEx, correctly recognizing that the law permits a licensee to use third parties in order to exercise rights granted by a license, unless the license specifically prohibits such conduct. The Court should reject Great Minds' recycled allegations here—concerning the very same license—on the same basis. Because Office Depot's conduct was permitted by unambiguous terms of the license between Great Minds and the relevant schools and school districts, Great Minds fails to state a claim for copyright infringement against Office Depot. Office Depot respectfully requests that Great Minds' copyright infringement claim be dismissed with prejudice.

## II. Summary of Relevant Allegations

Great Minds (formerly Common Core, Inc.) is a non-profit organization whose stated mission is to "support a comprehensive and high-quality education in America's public schools." Compl. ¶ 9. It has created a math curriculum for grades PreK-12, Eureka Math, which it makes available, without charge, to school districts and other members of the public under the terms of a public license promulgated by a third-party organization, Creative Commons Corporation ("Creative Commons"). *Id*. ¶¶ 9-10, 13.

Among other things, the "Creative Commons Attribution – Non Commercial – Share Alike 4.0 International Public License" (the "Creative Commons Public License") authorizes school districts and other licensees to "reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only." Compl. Ex. B ¶ 2(a)(1)(A). The term "NonCommercial" is defined broadly to cover any use that is "not primarily intended for or directed towards commercial advantage or monetary compensation." *Id*. ¶ 1.k.[1] The term "Share" means "to provide material to the public by any means or process that requires permission under the Licensed Rights, such as reproduction, public display, public performance, distribution, dissemination, communication, or importation, and to make material available to the public including in ways that members of public may access the material from a place and at a time individually chosen by them." *Id*. ¶ 1(l). Great Minds expressly "waives any right to collect royalties from [an entity exercising rights under the Creative Commons Public License] for the exercise of the Licensed Rights" as long as the materials are used for "NonCommercial" purposes. *Id*. ¶¶ 2(a)(1)(A), 2(b)(3).

The educational use of Eureka Math by schools and school districts falls squarely within the "NonCommercial" definition, and Great Minds does not claim otherwise. *See* Compl. ¶¶ 13-14. Notably, the Creative Commons Public License does not require that the reproduction of Great Minds' materials be undertaken directly by the licensee, nor does it prohibit licensees from using third parties in order to exercise such rights. *See generally* Compl. Ex. B. To the contrary, the Creative Commons Public License broadly permits licensees "to provide material to the public by any means or process that requires permission." *Id*. ¶ 1.l; *see also id*. ¶ 1.i ("Licensed Rights means … all Copyright and Similar Rights … that the Licensor has

---

[1] Tellingly, Great Minds' Complaint fails to quote or cite the definition of "NonCommercial" and repeatedly mischaracterizes the meaning of the term by, among other things, omitting the key word "primarily" and failing to acknowledge that the licensee's *intent* is critical. Compl. ¶¶ 13, 14.

2

authority to license."). Great Minds does not allege that Office Depot is itself a party to the Creative Commons Public License, and acknowledges that Office Depot makes copies "at the request of schools and school districts." Compl. ¶ 30.[2]

Although Great Minds acknowledges that the Creative Commons Public License permits schools and school districts to freely reproduce and share the Eureka Math materials for non-commercial uses, Great Minds alleges that by reproducing the educational materials *on behalf of* these licensees so that the schools can effectively exercise their rights under the license, Office Depot willfully infringed 78 of Great Minds' copyrights in the Eureka Math materials. Compl. ¶¶ 21, 26, 30-33 & Ex. A. Great Minds alleges that the "NonCommercial" limitation in the Creative Commons Public License requires commercial print shops, such as Office Depot, to "negotiate a license and pay a royalty to Great Minds if they wish to use or reproduce Eureka Math for commercial purposes – *i.e.*, for their own profit." *Id.* ¶ 14.

After Great Minds realized that Office Depot was reproducing the Eureka Math materials on behalf of schools and school districts without entering into a *separate* royalty-bearing license with Great Minds, the parties entered into a license agreement dated August 10, 2015, pursuant to which Office Depot would reproduce and distribute Eureka Math materials in exchange for royalty payments to Great Minds. *Id.* ¶¶ 18, 20. The agreement also released Office Depot from "any claims arising from Office Depot's prior, unauthorized commercial reproduction of Eureka Math." *Id.* The parties executed a renewal agreement in June 2016, and subsequently agreed in writing to extend its terms until June 30, 2017. *Id.* ¶¶ 23-24.

At the time that the parties initially entered into the license agreement, no court had addressed whether a commercial print service infringed copyright by reproducing

---

[2] As discussed in more detail in Section IV.B below, Great Minds' allegation that Office Depot "solicit[s]" business from school districts is irrelevant to Great Minds' copyright claim (or any other claim in this action). A copyright owner does not, of course, have any right to control whether a third party solicits business from its licensee, and soliciting business is not copyright infringement.

materials subject to the Creative Commons Public License on behalf of a licensee using the materials for a "NonCommercial" purpose. *See* Compl. ¶ 28. On February 24, 2017, however, the U.S. District Court for the Eastern District of New York dismissed a copyright infringement claim based on those facts brought by Great Minds against FedEx Office and Print Services, Inc. ("FedEx"). *Id.*; *Great Minds v. FedEx Office & Print Servs., Inc.*, Case No. 16-CV-1462 (DRH) (ARL), 2017 WL 744574 (E.D.N.Y. Feb. 24, 2017).

Great Minds' allegations against FedEx mirrored its allegations against Office Depot here. Just as it does here, Great Minds argued that FedEx's reproduction of Eureka Math materials on behalf of school districts was a "commercial" use beyond the scope of the Creative Commons Public License, and therefore constituted an unauthorized infringing use by FedEx. *Id.* at *2; *see infra*, Section IV.A. The court dismissed Great Minds' infringement claim after finding that "the unambiguous terms of [the Creative Commons Public] License permit FedEx to copy the Materials on behalf of a school district exercising rights under the License and charge that district for that copying at a rate more than FedEx's cost, in the absence of any claim that the school district is using the Materials for other than a 'non-Commercial purpose.'" *FedEx*, 2017 WL 744574, at *5; Compl. ¶ 29.[3] Great Minds alleges that, "in the wake of [this] ruling," Office Depot gave notice to Great Minds that it was terminating the parties' license agreement as of June 10, 2017. Compl. ¶¶ 27-28.

While Great Minds concedes the similarity of its allegations here to its dismissed allegations against FedEx, it argues that "[t]his case is different" due to Great Minds' allegations that Office Depot "employ[s] field representatives who are actively soliciting schools using Eureka Math to offer Office Depot's commercial reproduction services for Eureka Math" by "contact[ing] those schools to offer Office Depot's commercial reproduction services for Eureka Math." *Id.* ¶¶ 30-32.

---

[3] Great Minds' appeal of this ruling to the Second Circuit is currently pending. Compl. ¶ 28.

## III. Legal Standard

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal pursuant to Rule 12(b)(6) is proper where a cause of action fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). To survive a motion to dismiss, a complaint must include "facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007). This requires more than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements," *id.* at 545, and must be supported by more than mere conclusory statements, *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In *Iqbal*, the Supreme Court established a two-step approach for determining whether a complaint may survive a Rule 12(b)(6) motion to dismiss. *First*, the Court identifies conclusory allegations and disregards them because they are "not entitled to the assumption of truth." *Id.* at 680. *Second*, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the Court finds that the plaintiff does not allege sufficient facts "to raise a right to relief above the speculative level" and support a "cognizable legal theory," it may dismiss the complaint as a matter of law. *Twombly*, 550 U.S. at 545; *Mindlab Media, LLC v. LWRC Int'l LLC*, No. CV 11-3405 CAS (FEMx), 2012 WL 386695, at *4 (C.D. Cal. Feb. 6, 2012) (dismissing copyright infringement claim where the plaintiff's supporting allegations were conclusory and lacked factual support). Complaints that allege "facts that are merely consistent with a defendant's liability" fail to satisfy the "plausibility" requirement. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted); *see also Twombly*, 550 U.S. at 557.

### IV. Office Depot's Reproduction of Eureka Math Materials for School Districts Does Not Exceed the Scope of the School Districts' License and Is Not Copyright Infringement

To state a claim for copyright infringement, the plaintiff must allege (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.[4] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). It is well-established that a copyright infringement claim fails if the challenged use of the work is authorized by a license. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) ("A copyright owner who grants a nonexclusive, limited license ordinarily waives the right to sue licensees for copyright infringement.") (citations omitted). To interpret the Creative Commons Public License, the Court should "rely on state law to provide the canons of contractual construction, but only to the extent that such rules do not interfere with federal copyright law or policy." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1981) (citations omitted). Whether a contract or its terms are ambiguous is a question of law. *San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997).

Because Great Minds has not and cannot allege facts demonstrating that Office Depot's conduct on behalf of the schools and school districts was outside the scope of the unambiguous terms of the Creative Commons Public License, its copyright infringement claim should be dismissed.

#### A. Licensee Schools and School Districts Are Permitted to Use Third Party Copy Services Like Office Depot

As set forth above in Section II, Great Minds does not allege that the schools and school districts are using the licensed Eureka Math materials for a commercial purpose or that their use otherwise exceeds the bounds of the Creative Commons

---

[4] For purposes of this Motion only, Office Depot does not challenge Great Minds' allegations concerning these required elements, but Office Depot does not concede and reserves the right to challenge them.

Public License.  Indeed, Great Minds touts the fact that thousands of schools nationwide provide its instructional materials to their students pursuant to this license. *See, e.g.*, Compl. ¶ 9 ("Great Minds … works with teachers and scholars to create instructional materials"); *id.* ¶ 10 ("[a]s a central component of [its] mission, Great Minds has created, among other products and curricula, Eureka Math – a comprehensive math curriculum for grades PreK-12 used by schools around the country."); *id.* ¶ 11 ("Eureka Math has become the most widely used math curriculum in the United States."); *id.* ¶ 11 ("Great Minds … makes Eureka Math available for any member of the public to 'reproduce and Share . . . in whole or in part . . . under a Creative Commons Attribution – non Commercial – Share Alike 4.0 International Public License. . . .'").

Language in a contract is ambiguous if it "is reasonably susceptible of more than one application to material facts." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006).  The unambiguous terms of the Creative Commons Public License grant licensee schools and school districts the right "to reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only," and do not preclude them from employing third parties like FedEx and Office Depot to make copies of the materials for the schools.  Compl. Ex. B; *see also FedEx*, 2017 WL 744574, at *4 ("the [Creative Commons Public] License does not limit a licensee's ability to use third parties in exercising the rights granted by the License.  [Great Minds] concedes as much when it conceded that it would be permissible for FedEx to copy the materials if it did so at cost.").  Indeed, the Creative Commons Public License expressly permits licensees to "provide material to the public by any means or process that requires permission under the Licensed Rights, such as reproduction… distribution, [or] dissemination."  Compl. Ex. B ¶ 1.l.

Courts analyzing this issue have unanimously held that utilizing third parties to exercise the rights granted under a copyright license is permissible, absent an express license term precluding it.  In *Automation by Design, Inc. v. Raybestos Prods. Co.*, the

plaintiff granted the defendant a "non-transferable" license to duplicate its designs in order to build a machine on its behalf. 463 F.3d 749, 751 (7th Cir. 2006). The plaintiff then claimed that the defendant violated the terms of the license when it hired a third party to use the designs to build the machine. *Id.* at 756. The court rejected the plaintiff's theory, holding that "allowing one's agent or contractor to use designs for one's own benefit is not a transfer" that would violate the license, noting that "it seems clear that Raybestos simply hired [the third party] to act in Raybestos' stead—using the design to create a machine that it likely did not have the capacity to create on its own." *Id.* at 757-58. The *Automation by Design* court explained its reasoning by means of an especially apt analogy:

> If … Raybestos lacked the capacity to photocopy the designs on sight (if, for example, the designs were too large for an ordinary copier or needed to be reproduced in color), ***Raybestos could certainly take the designs to a Kinko's photocopy shop to have them copied***. Similarly, if it lacked the capacity to manufacture parts on its own, it had the right to hire another to do so in its stead. It is true, as the dissent points out, that PDSI benefitted from having the designs. It benefitted in part, however, in the same way that Kinko's might benefit from being awarded a photocopy job.

*Id.* at 757 (emphasis added). Earlier this year, the Eastern District of New York assessed Great Minds' *nearly identical allegations* against FedEx involving the very same Creative Commons Public License, and determined that FedEx's commercial reproduction of Great Minds' materials on behalf of school districts did not constitute copyright infringement. Following the reasoning set forth in *Automation by Design*, the court held:

> GM's reliance on the language of the License which grants the right to reproduce and share the Material "for NonCommercial

8

Purposes" does not save its case. As noted earlier, the License states that "You," defined as "the individual or entity exercising the Licensed Rights" under the License may "reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only." […] Under the present scenario, the entities exercising the "Licensed Rights" are the school districts, not FedEx, as there is no claim that the school districts are reproducing or sharing the materials for other than a "nonCommercial Purpose." *As the school districts are the entities exercising the rights granted by the License, it is irrelevant that FedEx may have benefitted by having been hired by them to act, viz. make copies, in their stead*.

Nor can the reservation of rights contained in the License be read to preclude a licensee from hiring someone to make copies of the Materials so the licensee can use them for a "nonCommercial" purpose. The applicable provision states in relevant part: "To the extent possible, Licensor waives any right to collect royalties from You for the exercise of the Licensed Rights . . . . In all other cases the Licensor expressly reserves any right to collect such royalties, including when the Licensed Material is used other than for NonCommercial Purposes." Rather, *the unambiguous import of this provision is to reserve GM's right to collect royalties from a licensee if the licensee exceeds the scope of the license by, for example, selling copies of the Materials*.

*FedEx*, 2017 WL 744574, at \*4-5 (emphases added).[5]

Unsurprisingly, courts within the Ninth Circuit and elsewhere have reached the same conclusion. For example, *Intel Corp. v. Advanced Micro Devices, Inc.* considered "whether the license of the right to copy Intel microcode under [the parties' license agreement] includes the right to have the Intel microcode copied by third party subcontractors." No. C-90-20237-WAI, 1994 WL 594041, at \*1 (N.D. Cal. Oct. 20, 1994). The court held that "[t]he use of third parties to perform acts incident to … the exercise of a [Copyright Act] Section 106 right duly licensed" is "covered by the broad contractual grant of the right to copy unless otherwise contractually restricted." *Id.* at \*2. Where the contract at issue granted "the right to copy in broad terms [with] [n]o limitations … included in the grant," the defendant's "retention" of a third party to copy the materials for its benefit "does not exceed the scope of the license." *Id.* at \*3. The court noted that to hold otherwise would "frustrate" the defendant's ability to exercise the rights expressly granted under license. *Id.*

And in *Estate of Hevia v. Portrio Corp.*, the First Circuit noted that "[w]hen … there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation." 602 F.3d 34, 45-46 (1st Cir. 2010) (citing *Automation by Design*, 463 F.3d at 758); *see also Bennett v. America Online, Inc.*, No. 06-13221, 2007 WL 2875169, at \*3 (E.D. Mich. Sept. 28, 2007) (no copyright infringement where third party "copied … files for virus scanning… because [the third party] acted as [an] agent … and thereby merely undertook actions on behalf of [licensee] that [the licensee] was itself authorized to do"); *Avaya Inc. v.*

---

[5] Courts reach similar results in analogous contexts. *See, e.g.*, *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1074–75 (Fed. Cir. 2009) (holding, in patent context, that defendant "did not breach the License by contracting with third parties to have the licensed products made for its own use," since "[a] grant of a right to 'make, use, and sell' a product… inherently includes a right to have a third party make the product").

*Telecom Labs., Inc.*, No. 06-2490 (JEI/KMW), 2014 WL 97335, *6 n.26 (D.N.J. Jan. 7, 2014) ("Avaya's explicit allowance of use by 'contractors, or consultants' is consistent with the prevailing construction of licensing agreements that allow third-party use for the licensee's benefit."). "This comports with the general rule of contract interpretation 'that an interpretation which gives a reasonable, lawful and effective meaning to all terms is preferred to an interpretation which leaves part unreasonable, unlawful or of no effect.'" *Blue Phoenix Media Inc. v. Essociate Inc.*, No. CV-1200834-JVS-MLGx, 2012 WL 12888834, at *5 (C.D. Cal. June 15, 2012) (Selna, J.) (quoting 1 Witkin Sum. Cal. Law Contracts § 750 (10th ed. 2011)).

Similarly, courts have held that this type of delegation under a copyright license is not an unpermitted "transfer" of rights. *See, e.g., Hogan Sys. Inc. v. Cybresource Int'l Inc.*, 158 F.3d 319, 323 (5th Cir. 1998) (abrogated on other grounds by *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016)) (permitting a licensee to allow third parties to work on the subject software on its behalf would not constitute "a transfer of license rights" in violation of the license and upholding district court's reasoning that "[t]here is no issue of assignment or transfer since all of the work being done inures to the benefit of [the licensee].").

As plaintiff alleged in *Raybestos* and Great Minds itself alleged in *FedEx*, Great Minds here alleges that the schools and school districts hired Office Depot to duplicate the Eureka Math materials, rather than use their own equipment to do so, in order to further *the schools'* own "NonCommercial" use of the materials. *See, e.g.*, Compl. ¶¶ 26, 30. And as with the license in *Intel*, the Creative Commons Public License includes a "broad contractual grant of the right to copy." *Intel Corp.*, 1994 WL 594041, at *2. The Creative Commons Public License grants a broad right "reproduce and Share the Licensed Material," where "Share" is defined as "to provide material to the public **by any means or process** that requires permission under the Licensed Right," expressly including "reproduction." Compl. Ex. B at ¶¶ 2(a)(1)(A); 1(l) (emphasis added).

Because the Creative Commons Public License does not preclude licensees from employing third parties to exercise the rights granted, under the authority set forth above, hiring a commercial copy service such as Office Depot to reproduce the materials did not exceed the scope of the license to the schools and school districts. *See, e.g.*, *EMI Catalogue P'ship v. CBS/FOX Co.*, No. 86 CIV 1149 (PKL), 1994 WL 163700, at *3–4 (S.D.N.Y. Apr. 28, 1994) (holding that "the phrase 'by any means' permit[ted] [defendants] to license third parties to manufacture and distribute" subject works, and finding that "[m]ost importantly, the defendants' interpretation is a natural reading of the word "distributed by any means": licensing third party manufacturing and distribution is a means of distribution."). Moreover, the "Licensed Rights" include, by definition, "all Copyright and Similar Rights," Compl. Ex. B ¶ 1.i—which, under the Copyright Act, includes the right "to authorize… reproduc[ing] the copyrighted work," 17 U.S.C. § 106(1). The school district licensees thus had the express right under the Creative Commons Public License to authorize Office Depot to reproduce Great Minds' materials for the licensees' use, as long as the *licensees'* purpose was "not primarily intended for or directed towards commercial advantage or monetary compensation." Compl. Ex. B ¶ 1.k.

In short, Office Depot, like FedEx, is shielded by the Creative Commons Public License between the school districts and Great Minds; was not required to independently seek permission from Great Minds to copy the Eureka Math materials at the request of Great Minds' licensees; and is not bound by the "NonCommercial" restriction of the Creative Commons Public License such that it could only reproduce the materials at cost.[6] Office Depot did not infringe based on actions it undertook for profit at the behest of an admittedly *bona fide* licensee. To interpret the Creative

---

[6] Great Minds does not allege that Office Depot is itself a party to or bound by the Creative Commons Public License, and could not plausibly do so. *See, e.g.*, Compl. Ex. B ¶ 5.A ("Every recipient of the Licensed Material automatically receives an **offer** from the Licensor to exercise the Licensed Rights under the terms and conditions of this Public License) (emphasis added).

Commons Public License as Great Minds urges would not only prevent licensees from effectively exercising the rights they are granted, but would eviscerate the Creative Commons Public License by denying licensees rights that the license expressly grants.

### B. Great Minds' Allegation That Office Depot "Actively Solicit[s]" Schools and School Districts for Commercial Reproduction of the Eureka Math Materials Cannot Save Its Defective Copyright Infringement Claim

Great Minds urges the Court to distinguish this case from *FedEx* on the irrelevant basis that Office Depot purportedly "actively solicit[s]" schools and school districts to use Office Depot's services to copy licensed materials. Compl. ¶ 30 (alleging Office Depot "employs field representatives who are actively soliciting schools and school districts for [Office Depot's] commercial reproduction services using Eureka Math"); *id.* ¶ 31 ("Office Depot's representatives use Google Alerts to track schools and school districts using Eureka Math, and the representatives then contact those schools to offer Office Depot's commercial reproduction services for Eureka Math."); *id.* ¶ 32 ("Office Depot employs a field representative for the Southern California area who is actively soliciting schools in Los Angeles and the surrounding area for Office Depot's commercial reproduction of Eureka Math."); *id.* ¶ 33 ("Office Depot is presently engaged in unauthorized solicitation … of Great Minds' copyrighted Eureka Math materials" [sic]). Based on these allegations, Great Minds alleges that Office Depot infringed Great Minds' works "by actively soliciting customers for commercial reproduction of Eureka Math and by commercially reproducing and distributing Eureka Math for profit without authorization or license from Great Minds." *Id.* ¶ 35.

Great Minds does not allege that Office Depot made unauthorized copies of the Eureka Math materials in the course of any alleged "soliciting." Any solicitation of business from school districts is both irrelevant to Great Minds' copyright claim, and fails to distinguish this case from *FedEx*. Great Minds cites no authority for the unprecedented proposition that offering photocopying services *to an authorized*

13
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CLAIM I
CASE NO. 2:17-CV-07435-JFW (Ex)

*copyright licensee* could possibly constitute copyright infringement, when the act of photocopying itself would *not* be infringing.

First, Great Minds' allegations fail to distinguish this case from *FedEx*. *FedEx* flatly held that a commercial photocopier does not infringe when it makes copies of Great Minds' works on behalf of a school district in furtherance of the school district's exercise of the rights granted to it by the Creative Commons Public License. *FedEx*, 2017 WL 744574, at *4-5. The Creative Commons Public License granted the schools and school districts broad rights to reproduce and "Share" Great Minds' materials "by any means or process that requires permission," which properly includes the ability to use third parties like Office Depot to make such copies. As discussed in Section IV.A above, a licensee may engage the services of a third party to "perform acts incident to … the exercise of a [copyright act] section 106 right duly licensed." *Intel Corp.*, 1994 WL 594041, at *1. That being so, it is irrelevant whether the commercial photocopier "solicit[s]" such *non-infringing* business.

Second, as a matter of black letter law, "soliciting" business is not, and cannot be, an act of copyright infringement in and of itself. *See* 17 U.S.C. § 106 (listing exclusive rights of copyright owner). Great Minds does not allege that Office Depot made unauthorized copies of the Eureka Math materials as part of the "solicitation," and "soliciting" does not transform otherwise permitted conduct into infringing conduct. Courts have universally recognized that "intent … is not an element of [copyright] infringement.'" *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 156 (E.D.N.Y. 2016) (quoting *Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986)); *Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99 C 1300, 2001 WL 58950, at *8 (N.D. Ill. Jan. 22, 2001) ("any argument as to intent is inapposite to a finding of copyright liability because infringement does not require any particular state of mind"). Finally, Office Depot's alleged "soliciting" could not violate the terms of the Creative Commons Public License in any event, since (as explained above) Office Depot is *not a party* to that

license.  "It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

## V.     Conclusion

For all of the foregoing reasons, Defendant respectfully requests that the Court dismiss Claim I of Plaintiff's Complaint.  Because Great Minds cannot remedy the defect in its copyright infringement claim with further or more detailed factual allegations, amendment would be futile and dismissal should be with prejudice.

DATED: December 6, 2017                WINSTON & STRAWN LLP

By: */s/ Jennifer A. Golinveaux*
    Jennifer A. Golinveaux
    Diana Hughes Leiden
    Irina V. Lyapis

*Attorneys for Defendant*
OFFICE DEPOT, INC.