**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 17-7435-JFW (Ex)** | Date: January 18, 2018 |
| Title: | Great Minds *-v-* Office Depot, Inc. | |

**PRESENT:**

      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**  ORDER GRANTING OFFICE DEPOT, INC.'S MOTION TO DISMISS CLAIM I OF PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) [filed 12/6/17; Docket No. 25]

On December 6, 2017, Defendant Office Depot, Inc. ("Office Depot") filed a Motion to Dismiss Claim I of Plaintiff's Complaint Pursuant to Rule 12(b)(6) ("Motion"). On December 18, 2017, Plaintiff Great Minds ("Great Minds") filed its Opposition. On December 22, 2017, Office Depot filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's January 8, 2018 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

    **A.    Great Minds and *Eureka Math***

Great Minds is a non-profit organization that produces various educational materials used by school districts across the country and its stated mission is to "support a comprehensive and high-quality education in America's public schools." Complaint, ¶ 9. Great Minds has created and copyrighted a math curriculum for grades PreK-12, *Eureka Math* (the "Material"), which it makes freely available to school districts and other members of the public under the terms of a public license promulgated by a third-party organization, Creative Commons Corporation ("Creative Commons"). Great Minds publishes and sells printed book versions of the Material to schools around the country. In addition, Great Minds enters into royalty bearing licenses with third parties for commercial reproduction of the Material.

### B.     The Creative Commons Public License[1]

Great Minds, as the licensor, makes *Eureka Math* available under the "Creative Commons Attribution – Non Commercial – Share Alike 4.0 International Public License" (the "Creative Commons Public License").  The Creative Commons Public License describes the licensed rights as follows: "Licensor hereby grants You[2] a worldwide, royalty-free, non-sublicensable, non-exclusive, irrevocable license to exercise the Licensed Rights in the Licensed Material to reproduce and Share[3] the Licensed Material, in whole or in part, for NonCommercial[4] purposes only."  *Id.,* ¶ 2(a)(1)(A).  The Creative Commons Public License also provides that as Licensor, Great Minds "waives any right to collect royalties from You for the exercise of the Licensed Rights, whether directly or through a collecting society under any voluntary or waivable statutory or compulsory licensing scheme.  In all other cases the Licensor expressly reserves any right to collect such royalties, including when the Licensed Material is used other than for NonCommercial purposes."  *Id.*, ¶ 2(b)(3).

The License also requires that a licensee who shares the Material must "indicate the Licensed Material is licensed under this Public License, and include the text of, or the URI or hyperlink to, this Public License."  *Id.*, ¶ 3(a)(1)(C).  With respect to "Downstream recipients," the License provides that "[e]very recipient of the Licensed Material automatically receives an offer from the Licensor to exercise the Licensed Rights under the terms and conditions of this Public License" and "[y]ou may not offer or impose any additional or different terms or conditions on, or apply any Effective Technological measures to, the Licensed Material if doing so restricts exercise of the Licensed Rights by any recipient of the Licensed Material."  *Id.*, ¶ 2(a)(5)(A) & (C).

### C.     The August 10, 2015 Agreement Between Great Minds and Office Depot

After Great Minds discovered that Office Depot was reproducing the Materials on behalf of schools and school districts without entering into a separate royalty-bearing license with Great

---

[1] A complete copy of the Creative Commons Public License is attached as Exhibit B to the Complaint.

[2] "You" is defined as "the individual or entity exercising the Licensed Rights."  Creative Commons Public License, ¶ 1(n).

[3] "Share" is defined in the Creative Commons Public License to mean "to provide material to the public by any means or process that requires permission under the Licensed Rights, such as reproduction, public display, public performance, distribution, dissemination, communication, or importation, and to make material available to the public including in ways that members of public may access the material from a place and at a time individually chosen by them."  *Id.*, ¶ 1(l).

[4] "NonCommercial" is defined as "not primarily intended for or directed towards commercial advantage or monetary compensation.  For purposes of this Public License, the exchange of Licensed Materials for other material subject to Copyright or Similar Rights by digital file-sharing or similar means is NonCommercial provided there is no payment of monetary compensation in connection with the exchange."  *Id.*, ¶ 1(k).

Minds, the parties entered into a licensing agreement dated August 10, 2015, pursuant to which Office Depot was allowed to reproduce and distribute the Materials in exchange for royalty payments. In the licensing agreement, Great Minds specifically released Office Depot from "any claims arising from Office Depot's prior, unauthorized commercial reproduction of Eureka Math." Complaint, ¶¶ 18 and 20. The parties executed a renewal agreement in June 2016, and subsequently agreed in writing to extend its terms until June 30, 2017. *Id.*, ¶¶ 23-24.

### D.    The *FedEx* Case

In 2015 when Great Minds and Office Depot entered into the licensing agreement, no court had addressed whether a commercial print service could be liable for copyright infringement for copying or reproducing the Materials for a licensee who was using the Materials for a "NonCommercial" purpose. However, on February 24, 2017, the U.S. District Court for the Eastern District of New York dismissed a copyright infringement claim brought by Great Minds against FedEx Office and Print Services, Inc. ("FedEx") alleging the identical claim of copyright infringement brought against Office Depot in this action. *Great Minds v. FedEx Office & Print Servs., Inc.*, 2017 WL 744574 (E.D.N.Y. Feb. 24, 2017). In *FedEx*, Great Minds argued that FedEx's reproduction of the Materials on behalf of school districts was a "commercial" use beyond the scope of the Creative Commons Public License, and, thus, constituted an unauthorized and infringing use by FedEx. *Id.* at *2. However, the court disagreed and dismissed Great Minds's infringement claim after finding that "the unambiguous terms of [the Creative Commons Public] License permit FedEx to copy the Materials on behalf of a school district exercising rights under the License and charge that district for that copying at a rate more than FedEx's cost, in the absence of any claim that the school district is using the Materials for other than a 'non-Commercial purpose.'"[5]  *Id.* at *5.

In its Complaint, Great Minds alleges that, "in the wake of [this] ruling," Office Depot gave notice to Great Minds that it was terminating the licensing agreement effective June 10, 2017.

### E.    Procedural History

On October 11, 2017, Great Minds filed a Complaint against Office Depot, alleging claims for: (1) copyright infringement; and (2) breach of contract. In its Complaint, Great Minds does not allege that licensee schools and school districts used the Materials for a "NonCommercial" purpose. Instead, Great Minds alleges that by reproducing the Materials on behalf of various schools and school districts, Office Depot willfully infringed 78 of Great Minds' copyrights in the Materials. Great Minds alleges that the "NonCommercial" limitation in the Creative Commons Public License requires commercial print shops, such as Office Depot, to "negotiate a license and pay a royalty to Great Minds if they wish to use or reproduce Eureka Math for commercial purposes – *i.e.*, for their own profit." Complaint, ¶ 14.

---

[5] Great Minds' appeal of this ruling to the Second Circuit Court of Appeals is currently pending.

## II.     Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III.     Discussion[6]

---

[6] Office Depot's Request for Judicial Notice (Docket No. 31) is **DENIED**. *See HsingChing Hsu v. Puma Biotechnology, Inc.*, 2016 WL 9408516, *1 (C.D. Cal. Feb. 25, 2016) ("It is unusual to ask the Court to take judicial notice of a document for the first time in a reply brief. That rarity speaks to the impropriety of the practice. This principle is particularly true in the context of a

In its Motion, Office Depot argues that Great Minds has failed to state a claim for copyright infringement because Office Depot's reproduction of the Materials for school districts does not exceed the scope of the school districts' license and that the court's ruling in *FedEx* on virtually identical facts supports Office Depot's position. Although Great Minds concedes the similarity of its allegations in both cases, it argues that its allegations in this case go well beyond those in the *FedEx* case. Specifically, Great Minds relies on its allegations that Office Depot "employ[s] field representatives who are actively soliciting schools using Eureka Math to offer Office Depot's commercial reproduction services" and that the Office Depot field representatives are "contact[ing] those schools to offer Office Depot's commercial reproduction services for Eureka Math." Complaint, ¶¶ 30-32.

### A.     Legal Standard for Copyright Infringement

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A copyright infringement claim fails if the challenged use of the work is authorized by a license. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) ("A copyright owner who grants a nonexclusive, limited license ordinarily waives the right to sue licensees for copyright infringement.") (citations omitted). To interpret the Creative Commons Public License, it is appropriate to "rely on state law to provide the canons of contractual construction, but only to the extent that such rules do not interfere with federal copyright law or policy." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1981) (citations omitted). Whether a contract or its terms are ambiguous is a question of law. *San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997). Language in a contract is ambiguous if it "is reasonably susceptible of more than one application to material facts." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006).[7]

### B.     Great Minds Has Failed to State a Claim for Copyright Infringement.

In this case, the Court agrees with Office Depot and concludes that the Creative Commons Public License unambiguously grants the licensee schools and school districts the right "to reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only," and does not prohibit the schools and school districts from employing third parties, such as Office Depot, to make copies of the Materials. *See, e.g., Marconi Wireless Telegraph Co. Of America v. Simon*, 227 F. 906, 910 (S.D.N.Y. 1915), *aff'd* 231 F. 1021 (2d Cir. 1916) ("A licensee to make and use is not (in the absence of specific language in his license) limited to making with his own hands, in his own shop, or by his own employees. He may employ, procure, or contract with as many persons as he chooses to supply him with that which he may lawfully use, provided such conduct does not change his relation to the licensor"). As the court in *FedEx* held, the phrase "any means or process" contained in the Creative Commons Public License clearly indicates an

---

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)").

[7] The Court will apply California law to interpret the Creative Commons Public License in light of the parties' agreement that California law should apply.

intent to allow licensees broad latitude in exercising their licensed right to reproduce the Materials for NonCommerical purposes.

In addition, as in the *FedEx* case, the entities in this case exercising the rights under the Creative Commons Public License are the schools and school districts, not Office Depot. Importantly, Great Minds does not and cannot allege that the schools and school districts are reproducing or sharing the Materials for other than a NonCommercial purpose. Because the schools and school districts are the entities exercising the rights granted under the Creative Commons Public License, it is irrelevant that Office Depot may have profited from making copies for schools and school districts. *See FedEx*, 2017 WL 744574, *4-5 (holding that "the unambiguous terms of [the Creative Commons Public] License permit FedEx to copy the Materials on behalf of a school district exercising rights under the License and charge that district for that copying at a rate more than FedEx's cost, in the absence of any claim that the school district is using the Materials for other than a 'non-Commercial purpose'"); *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 751 (7th Cir. 2006) (holding that the defendant's use of a third party contractor to carry out the terms of a copyright license between the parties did not violate its terms); *Intel Corp. v. Advanced Micro Devices, Inc.*, 1994 WL 594041, *2 (N.D. Cal. Oct. 20, 1994) ("[t]he use of third parties to perform acts incident to . . . the exercise of a [Copyright Act] Section 106 right duly licensed" is "covered by the broad contractual grant of the right to copy unless otherwise contractually restricted"); *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 45-46 (1st Cir. 2010) ("[w]hen . . . there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation"); *see also, e.g., Hogan Sys. Inc. v. Cybresource Int'l Inc.*, 158 F.3d 319, 323 (5th Cir. 1998) (*abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016)) (permitting a licensee to allow third parties to work on the subject software on its behalf would not constitute "a transfer of license rights" in violation of the license and upholding district court's reasoning that "[t]here is no issue of assignment or transfer since all of the work being done inures to the benefit of [the licensee].").

Finally, the Court finds Great Minds' attempt to distinguish this case from *FedEx* and other similar cases unpersuasive. Specifically, Great Minds argues that Office Depot "employ[s] field representatives who are actively soliciting schools using Eureka Math to offer Office Depot's commercial reproduction services." *See* Complaint, ¶¶ 30-32. However, Office Depot's solicitation efforts do not meaningfully distinguish this case from *FedEx*. The unambiguous terms of the Creative Commons Public License grant the schools and school districts extremely broad rights to reproduce and "Share" Great Minds' Materials "by any means or process that requires permission," which clearly includes the licensee's ability to use third parties such as Office Depot to make the necessary copies. As discussed above, a licensee may engage the services of a third party to "perform acts incident to . . . the exercise of a [copyright act] section 106 right duly licensed." *Intel Corp.*, 1994 WL 594041, at *1. Therefore, it is irrelevant whether the commercial photocopier "solicits" non-infringing business. Moreover, "soliciting" business is not, and cannot be, an act of copyright infringement in and of itself. *See* 17 U.S.C. § 106 (listing exclusive rights of copyright owner). Thus, "soliciting" alone cannot transform otherwise permitted conduct into infringing conduct.

The Creative Commons Public License at issue authorizes schools to: (1) reproduce and use the Materials for NonCommercial purposes, (2) expressly permits the schools to provide those Materials to the public "by any means or process," and (3) does not prohibit the schools from outsourcing the copying to third party vendors. Because a licensee may lawfully use a third party agent or contractor to assist it in exercising its licensed rights, absent contractual provisions prohibiting such activity, Great Minds has failed to allege that Office Depot's conduct was outside the scope of the license and, thus, Great Minds' claim for copyright infringement against Office Depot fails.

## IV.   Conclusion

For all the foregoing reasons, Office Depot's Motion is **GRANTED**. Because amendment is futile, Great Minds' first claim for relief for copyright infringement is **DISMISSED without leave to amend**.[8]

IT IS SO ORDERED.

---

[8] Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting Great Minds to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). "Leave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (quotations and citations omitted). In this case, because the Court's interpretation of the Creative Commons Public License is a question of law, amendment would be futile.