RHETT O. MILLSAPS II (*pro hac vice pending*)
rhett@rhettmillsaps.com
LAW OFFICE OF RHETT O. MILLSAPS II
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 535-1137
Facsimile:  (646) 355-2816

JEFFREY E. OSTROW (SBN 213118)
jostrow@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

CHRISTOPHER J. SPRIGMAN (*pro hac vice pending*)
christopher.sprigman@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Attorneys for Plaintiff Great Minds

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT MINDS,<br><br>        Plaintiff,<br><br>    vs.<br><br>OFFICE DEPOT, INC.,<br><br>        Defendant. | Case No. 2:17-cv-07435 JFW (Ex)<br><br>**DECLARATION OF CHRISTOPHER J. SPRIGMAN IN SUPPORT OF OPPOSITION TO DEFENDANT OFFICE DEPOSIT, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 17 U.S.C. §505**<br><br>Hearing Date:  June 4, 2018, at 1:30 p.m.<br><br>Hon. John F. Walter<br>Courtroom:  7A – 1st Street<br><br>Action Filed:  October 11, 2017 |

# DECLARATION OF CHRISTOPHER J. SPRIGMAN

I, Christopher Jon Sprigman, declare as follows:

1.  I am a lawyer duly admitted to practice before the courts of the State of New York and the District of Columbia, and I am admitted *pro hac vice* in the United States District Court, Central District of California for the purposes of this case. I am Counsel at Simpson Thacher & Bartlett LLP, attorneys of record for plaintiff Great Minds. I have been counsel to Great Minds since at least 2014; my legal work for Great Minds has focused on matters related to intellectual property, which is my area of professional and academic expertise. I have personal knowledge of all facts stated in this declaration, and if called upon as a witness, I could and would competently testify thereto.

2.  I submit this declaration in opposition to defendant Office Depot's Motion for Attorneys' Fees and Costs Pursuant to 17 U.S.C. § 505.

3.  I am also a professor at the New York University School of Law, and the Co-Director of the NYU Engelberg Center on Innovation Law and Policy. I have been on the NYU Law faculty full-time since September of 2013.

4.  Prior to joining the NYU faculty, I was the Class of 1963 Research Professor at the University of Virginia School of Law. I joined the Virginia faculty as an Associate Professor in 2005, was promoted to full professor in 2010, and was awarded my research chair in 2011.

5.  Prior to joining the Virginia faculty, I was a Residential Fellow at the Center for Internet & Society at Stanford Law School. Before that, I was a counsel and then elected a partner at the law firm of King & Spalding, LLP. I was based in King & Spalding's Washington, DC office and worked mostly on antitrust and intellectual property matters.

6.  Prior to my employment at King & Spalding I served as Appellate Counsel at the Antitrust Division of the United States Department of Justice, where I

worked on *United States v. Microsoft* and a variety of other antitrust investigations and litigation.

7. I am the author or co-author of numerous academic articles, academic book chapters, articles and op-eds in the popular press, and a popular press book on intellectual property and innovation law and policy. I have given numerous academic talks and provided congressional testimony on intellectual property and innovation law and policy issues. My other relevant experience and education is listed on my CV, which is attached to this declaration as **Exhibit A**.

8. In 2015 and 2016 I communicated with employees of defendant Office Depot, Inc. ("Office Depot") following Great Minds' discovery that Office Depot was engaged in the unauthorized commercial reproduction and distribution of Great Minds' copyrighted *Eureka Math* materials ("Eureka Math").

9. Great Minds first learned of Office Depot's unauthorized commercial copying sometime in May 2015. During May and the first part of June 2015, Great Minds investigated reports from its field representatives and others that Office Depot was engaging in commercial reproduction and distribution of Eureka Math.

10. On or about June 22, 2015, I contacted Katherine L. Tabor, who, at the time, was Office Depot's Assistant General Counsel and Director of IP and Privacy. I reached Ms. Tabor by telephone, identified myself as counsel to Great Minds, and detailed for her what Great Minds had learned regarding Office Depot's unauthorized commercial reproduction and distribution of Great Minds' copyrighted Eureka Math curriculum. I told Ms. Tabor that if Office Depot wished to continue reproducing and distributing Eureka Math materials for commercial payment, it would have to reach a license agreement with Great Minds to permit it to do so.

11. Ms. Tabor and I continued our discussions over approximately the next month. During that time, Great Minds continued to gather information regarding the extent of Office Depot's unauthorized commercial reproduction and distribution of Eureka Math. As we learned more, it became clear that Office Depot was engaged in

unauthorized commercial reproduction and distribution of Eureka Math on a mass scale.

12. On July 20, 2015, I sent to Ms. Tabor a term sheet for a license permitting Office Depot to engage in the commercial reproduction and distribution of Eureka Math materials. That term sheet is attached to this declaration as **Exhibit B**.

13. Shortly after I sent Ms. Tabor the term sheet, she and I had a telephone call during which she raised the argument that because Eureka Math was licensed under a Creative Commons license, Office Depot was authorized under that license to make copies, and that there was therefore no need to reach a separate agreement with Great Minds or to pay a fee.

14. I responded to Ms. Tabor's argument by pointing out that Eureka Math was licensed through the "Creative Commons Attribution – Non Commercial – Share Alike 4.0 International Public License" (the "Public License"), which was strictly limited to *non-commercial* uses. I further explained that the license's noncommercial limitation applied to every individual or entity that copied or distributed Eureka Math, and that anyone who wished to commercially reproduce and distribute Eureka Math – *i.e.,* to reproduce and distribute Eureka Math in exchange for commercial payment – needed a license from Great Minds.

15. I further stated that Office Depot's reproduction and distribution of Eureka Math was clearly commercial activity, given that Office Depot was making the reproductions and distributions in exchange for commercial payment from its customers, and, as such, exceeded the scope of the Public License. Office Depot's reproduction and distribution, I recall stating to Ms. Tabor, was therefore copyright infringement. Ms. Tabor said that she would look at the language of the Creative Commons license and get back to me.

16. I understood both at the time and now that Great Minds' view of the meaning of "commercial" in the context of the Public License reflects the opinion of

the majority of the users of that license. Creative Commons itself published a survey in 2009, freely available online, that demonstrated that a majority of users of the Public License interpret the Public License's noncommercial condition to operate in a way that would prohibit Office Depot's commercial reproduction of materials licensed under it. *See* **Defining Noncommercial Full Report** (last visited May 14, 2018) (relevant excerpts are attached hereto for the Court's convenience as **Exhibit C**). More than a three-quarter majority of both content creators and content users surveyed agreed "that it is 'definitely' a commercial use if money is made from the use of a work in some way, including directly from the sale of a copy of a work." *Id*. at 74. Additionally, a supermajority of content creators using the Public License say, like Great Minds, that "they choose to license their work for noncommercial use primarily because the NC term allows them to control the right to make money from the work (70%), and they do not want anyone else to make money or get a commercial advantage from the work (61%)." *Id*. at 71.

17. Ms. Tabor called me a few days later and told me that Office Depot would enter into a license agreement with Great Minds on the terms laid out in my July 20 term sheet. Within the next few days we began to exchange draft agreements, and by August 10, 2015, Office Depot and Great Minds had executed a license agreement, titled "Agreement Between Great Minds and Office Depot for Office Depot's Limited Commercial Reproduction and Distribution of Great Minds Eureka Math Materials and Derivatives," (the "OD License"), which is attached to this declaration as **Exhibit D**.

18. The OD License authorized Office Depot "to engage in limited commercial reproduction and distribution of [Eureka Math]…in exchange for royalty payments and adherence to other conditions…" Ex. D at 1. The OD License, which was limited to a term of one year, also included a full release by Great Minds of any claims arising from Office Depot's prior, unauthorized commercial

- 4 -
Declaration of Christopher J. Sprigman

reproduction of Eureka Math in exchange for an additional royalty payment by Office Depot. *Id*. at 5-6.

19. On or around June 7, 2016 – a date approximately two months prior to the expiration of the Office Depot License –Bill Gandee, then Office Depot's Director of Strategic Markets/Print Services, reached out to me to request an extension of the term of the Office Depot License.

20. After I consulted with my client, Mr. Gandee and I negotiated a renewal agreement, titled "Renewal Agreement Between [Great Minds] and Office Depot for Office Depot's Limited Commercial Reproduction and Distribution of [Great Minds'] Eureka Math Materials" (the "OD Renewal Agreement"). That agreement, which was executed on June 24, 2016, is attached to this declaration as **Exhibit E**.

21. The OD Renewal Agreement continued to authorize Office Depot "to engage in limited commercial reproduction and distribution of [Eureka Math]…in exchange for royalty payments and adherence to other conditions" for an additional six-month period ending December 31, 2016. Ex. E at 1. The parties agreed to further extend the term of the Renewal Agreement in December 2016. A copy of that agreement is attached hereto as **Exhibit F**.

22. Attached hereto as **Exhibit G** is a copy of Great Minds' Petition for Rehearing *En Banc* or Panel Rehearing that Great Minds filed in the Second Circuit on April 4, 2018, and which the Second Circuit summarily denied on April 25, 2018.

23. Attached hereto as **Exhibit H** is a copy of an excerpt from Office Depot's publicly filed 2017 Form 10-K, showing that Office Depot reported more than $10 billion in sales in 2017. Office Depot has made the full 2017 Form 10-K available for download at **Office Depot Form 10-K** (last visited May 14, 2018).

24. Attached hereto as **Exhibit I** is a copy of an article from The Washington Post, dated May 10, 2016, that describes Office Depot as the second

- 5 -
Declaration of Christopher J. Sprigman

largest office supply retailer in the United States and is available online at **Federal Judge Blocks Staples Merger with Office Depot** (last visited May 14, 2018).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Executed on May 14, 2018 at New York, New York.


                          /s/ *Christopher J. Sprigman*
                          Christopher J. Sprigman